LOUIS MANSFIELD, Appellant, v. WAGNER ELECTRIC MANUFACTURING COMPANY.

Division Two, June 8, 1922.

1. **NEGLIGENCE: Violation of Statute: Injury not Covered by Statute.** When a statute creates a duty with the object of preventing an injury of a particular kind, a person who, by reason of another's neglect of the statutory duty, suffers an injury of a different kind, cannot maintain an action in respect of such injury.

2. ———: ———: ———: **Statute to Prevent Inhalation of Dust, Smoke and Gas: Injury to Eye.** Section 7839, Revised Statutes 1909 (now Sec. 6798, R. S. 1919), requiring every person, firm or corporation using any polishing wheel or machine of any character which generates dust, smoke or poisonous gases in its operation, to provide each and every such wheel or machine with a hood connected with a blower or suction fan of sufficient power to carry off said dust, smoke and gases and prevent its inhalation by those employed about said wheel or machine, covers only injuries received through breathing such substances into the lungs, and does not cover an injury to the eye of the operator of a moving emery wheel used for polishing castings, even though such injury was due to a violation of such statute by failure to equip such polishing wheel with hood and fan as thereby required.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss,* Judge.

AFFIRMED.

*W. B. & Ford W. Thompson* for appellant.

(1) The facts as established by the evidence present the following problem for this court: Plaintiff, while working as an employee of defendant and using an emery wheel, which was not guarded as the statutes provide, suffered a permanent injury to one of his eyes, due to the absence of the guard, which the law makes mandatory upon the defendant to supply. Sec. 7839, R. S. 1909; Sec. 6798, R. S. 1919. The particles of dust arising from the use of the unguarded emery wheel got into the eye of defendant, and injured his eye. The lower court held that such a guard was only required to protect the inhalation of the dust, and that an injury to the eye (which could not have happened, had the guard been supplied) was not one contemplated by the statute, viz., that notwithstanding the fact that such a guard would have taken off all the dust, yet since the dust was not inhaled, plaintiff could not recover. We submit that this decision is clearly erroneous, and that the judgment should be reversed.

*Charles A. Houts* and *Thomas J. Cole* for respondent.

The injury complained of is not one sought to be guarded against by the provisions of the statute upon which the petition is based, and the trial court's action in giving an instruction in the nature of a demurrer to the evidence was proper. Sec. 6798, R. S. 1919; Glaser v. Rothschild, 221 Mo. 180; Denton v. Ry. Co., 90 Kan. 51; Wing v. Smith, 190 Ill. App. 275; Kavanagh v. Ry. Co., 187 N. Y. Supp. 862; Platt v. Material Co., 4 Ga. App. 164; Drennen Co. v. Jordan, 181 Ala. 570; Fluker v. Brew. Co., 201 N. Y. 40; Morrissey v. Railroad, 15 R. I. 271; Willson v. Colo. Co., 57 Colo. 306, 317; Gorris v. Scott, 9 L. R. Exchequer, 125; Walsh v. Bridge Co., 44 Ont. L. R. 125, 131; Railroad Co. v. White, 43 Canada Sup. Ct. 627; Pollock on Torts (10 Ed.) p. 205; 29 Cyc. 438.

DAVID E. BLAIR, J.—The action is in damages for personal injuries. From a judgment in favor of the defendant entered upon a directed verdict, plaintiff has appealed.

Plaintiff was in the employ of defendant at the time of his injury. He was engaged in polishing a large metal casting with a movable emery wheel. This casting was too heavy to be moved to and held against a stationary emery wheel. The movable emery wheel had no hood connected with a blower or suction fan. Particles flying either from the casting or the wheel by reason of the operation of the rapidly revolving emery wheel entered one of plaintiff's eyes, and caused the injury for which he prayed damages in the sum of $10,000.

While not expressly pleading the statute in terms, plaintiff bases his action upon Section 7839, Revised Statutes 1909 (now Sec. 6798, R. S. 1919, as amended by Laws 1919, p. 443). So much of said statute as need be quoted here reads as follows:

"Every person, firm or corporation using any polishing wheel or machine of any character which generates dust, smoke or poisonous gases in its operation, shall provide each and every such wheel or machine with a hood, which shall be connected with a blower or suction fan of sufficient power to carry off said dust, smoke and gases and prevent its inhalation by those employed about said wheel or machine;  .  .  ."

At the conclusion of plaintiff's evidence the trial court instructed the jury that under the pleadings, the law and the evidence, its finding must be for the defendant. In obedience to said instruction the jury returned its verdict in favor of the defendant, and judgment against plaintiff was entered upon the verdict. Plaintiff's motion for new trial made some point concerning the court's rulings on evidence, but the main ground is alleged error in directing a verdict for the defendant. The applicability of the foregoing statute is the only ground for reversal urged here by appellant. His position in this court is stated as follows:

"The particles of dust arising from the use of the unguarded emery wheel got into the eye of defendant (plaintiff) and injured his eye. The lower court held that such a guard was only required to protect (from) the inhalation of the dust, and that an injury to the eye (which could not have happened, had the guard been supplied) was not one contemplated by the statute, viz., that notwithstanding the fact that such guard would have taken off all the dust, yet since the dust was not inhaled, plaintiff could not recover. We submit that this decision is clearly erroneous, and that the judgment should be reversed."

The words "plaintiff" and "from," put in parenthesis, were inserted by us to clarify the statement.

Plaintiff cites no decision of this or any other State in support of his contention that the injury sustained by him was of such character as to come within the foregoing statute. Looking to the statute, the hood, connect-

ed with the blower or suction fan of sufficient power to carry off dust, smoke and poisonous gases, is required for the purpose of preventing injury or disease through the inhalation of such smoke, dust or gas by those required to operate polishing wheels or machines. Unless we construe the statute to cover other injuries than those received through inhalation, that is, through breathing such substances into the lungs, plaintiff cannot recover, even though defendant may have violated the provisions of said statute.

We have found no case construing this statute, but analogous rulings have been made in this and other states. In Rutledge v. Mo. Pac. Ry. Co., 110 Mo. 312, one of the allegations of negligence was "that at the place where plaintiff was injured defendant did not have the space between the guardrail and the main rail blocked, by reason whereof his arm was caught between the rail and guardrail and crushed." In discussing this allegation of negligence, THOMAS, J., at the top of page 322, said: "And we also think the failure to block the main and guardrails ought not to be submitted to the jury as a ground of recovery. Blocking is intended to prevent feet from being caught and held, and not hands and arms."

In Glaser v. Rothschild, 221 Mo. 180, the plaintiff, who was an invitee and not an employee, fell into an elevator pit and was injured. The statute there under consideration, Section 6435, Revised Statutes 1899, required hatchways, elevators and well holes upon every floor of every manufacturing, mechanical or mercantile or public building in this State to be protected by trap doors, hatches, safety catches or strong guardrails. Said section was part of an act relating to the health and safety of employees. It was held that plaintiff did not come within the class of persons for whose protection said statute was enacted and he had no just cause of complaint because the trial court refused to instruct the

jury that the plaintiff had the right to presume that the premises through which it was necessary for him to pass in going to the water closet were in reasonably safe condition.

In Denton v. Railway Company, 90 Kan. 51, it was held that in order for the violation of a criminal statute to constitute actionable negligence, the injury complained of must be of the sort the legislation was intended to prevent. The statute against obstructing a street crossing by a train for more than ten minutes at a time was aimed at prevention of delay to travel on the highways, and acts in violation of such statute did not necessarily constitute negligence for the purposes of an action in which plaintiff relies upon the fact that the position of the cars, by obscuring his view of the track, prevented his seeing an engine approaching on another track in time to avoid collision. Mason, J., quoted from 21 Am. & Eng. Ency. Law, 481, as follows: "It is believed that as a general rule evidence of the violation of a statute or ordinance can tend to show actionable negligence only where the consequences particularly or generally contemplated by the provision in question have ensued from its violation."

And also quoted from 29 Cyc. 438, as follows: "In order to render the violation of a statute or ordinance actionable negligence the consequences which resulted from such negligence must have been those contemplated by the provision."

And also quoted from Chicago G. W. Ry. Co. v. Minn., St. P. & S. S. M. Ry. Co., 100 C. C. A. 41, 45, as follows:

" 'Negligence' is a breach of duty. Those only to whom that duty is due and who have sustained injuries of the character its discharge was designed to prevent can maintain actions upon it."

In Wing v. Smith, 190 Ill. App. 275, an employee was injured while polishing a plate with a revolving wheel. The plate flew out of his hands and struck him

in the eye. The negligence counted upon was violation of statutes requiring a hood or hopper on said wheel and requiring a guard and devices to enclose, fence, cover or protect said wheel. The full text of said statutes is set out at pages 278 and 279 of the opinion. The court said:

"It is obvious that the purpose of the Act of 1897 was to protect workmen from dust, and that there was no intention to protect from the kind of accident that occurred in this case. It is quite likely that the act could have been complied with and still left the machinery in such condition that this accident would have happened. But if there was a causal relation between the failure to comply with the Statute of 1897 and the injury, we are still of the opinion that the injury was not one sought to be guarded against by the provisions of that statute, and therefore that appellee could not make a case by showing its violation by appellant. To entitle a plaintiff to recover because of a violation of a statute imposing a duty on the defendant, he must be within the class contemplated by the statute, and within the purpose and protection for which the law was enacted."

Respondent quotes in its brief somewhat at length from Gorris v. Scott, 9 L. R. Exchequer 125, an English case. This case strongly supports the contention of respondent. The headnotes set out the meat of the opinion and we quote therefrom as follows:

"When a statute creates a duty with the object of preventing a mischief of a particular kind, a person who, by reason of another's neglect of the statutory duty, suffers a loss of a different kind, is not entitled to maintain an action in respect of such loss.

"The defendant, a shipowner, undertook to carry the plaintiffs' sheep from a foreign port to England. On the voyage some of the sheep were washed overboard by reason of the defendant's neglect to take a precaution enjoined by an order of Privy Council, which was made under the authority of the Contagious Diseases (Ani-

294 Mo.—16

mals) Act, 1869, s. 75:—*Held,* that the object of the statute and the order being to prevent the spread of contagious disease among animals, and not to protect them against perils of the sea, the plaintiffs could not recover.''

In his concurring opinion, POLLOCK, B., said:

''Admit there has been a breach of duty; admit there has been a consequent injury; still the Legislature was not legislating to protect against such an injury, but for an altogether different purpose; its object was not to regulate the duty of the carrier for all purposes, but only for one particular purpose.''

The Gorris Case, supra, was followed and approved in Walsh v. International Bridge & Terminal Co., 44 Ontario L. R. 117. The facts there were that plaintiff's husband went upon a railway viaduct and fell through between the uncovered railway sleepers to the ice in the canal below and was killed. The defendant had violated an order of the Dominion Railway Board requiring gates or watchmen and requiring the bridge company to floor its viaduct to prevent objects falling through the viaduct and injuring boats on the canal or people on the same. It was held that plaintiff's husband did not come within the class of persons designed to be protected by the required floor covering and that she could not recover for his death on account of the violation of such regulation. The court said: ''Where a duty is created, as this was, by statute, for the purpose of preventing a mischief of a particular kind, a person who by neglect of this duty suffers a loss of a different kind is not entitled to maintain an action for damages in respect of such loss.''

In St. Louis Railroad v. Conarty, 238 U. S. 243, the facts as set out in the opinion were: ''The deceased and two companions were standing on the foot-board at the front of the switch engine, and when the car was observed his companions stepped to the ground on either side of the track, while he remained on the foot-board and was caught between the engine and the body of the car at the end from which the coupler and drawbar were missing.

Had these appliances been in place they, in one view of the evidence, would have kept the engine and the body of the car sufficiently apart to have prevented the injury, but in their absence the engine came in immediate contact with the sill of the car, with the result stated. The deceased and his companions, with the switch engine, were on their way to do some switching at a point some distance beyond the car and were not intending, and did not attempt, to couple it to the engine or to handle it in any way. Its movement was in the hands of others." The only negligence charged against the railroad was its failure to have the car equipped with an automatic coupler and a drawbar of standard height as required by the Safety Appliance Acts. Mr. Justice VAN DEVANTER said:

"The principal question in the case is whether at the time he was injured the deceased was within the class of persons for whose benefit the Safety Appliance Acts required that the car be equipped with automatic couplers and drawbars of standard height; or, putting it in another way, whether his injury was within the evil against which the provisions for such appliances are directed. It is not claimed, nor could it be under the evidence, that the collision was proximately attributable to a violation of those provisions, but only that had they been complied with it would not have resulted in injury to the deceased. . . .

"It is very plain that the evils against which these provisions. are directed are those which attended the old-fashioned link and pin couplings where it was necessary for men to go between the ends of the cars to couple and uncouple them, and where the cars when coupled into a train sometimes separated by reason of the insecurity of the coupling. In Johnson v. Southern Pacific Co., 196 U. S. 1, 19, this court said of the provision for automatic couplers that 'the risk in coupling and uncoupling was the evil sought to be remedied;' and in Southern Ry. v. Crockett, 234 U. S. 725, 737, it was said to be the

plain purpose of the two provisions that 'where one ve-hicle is used in connection with another, that portion of the equipment of each that has to do with the safety and security of the attachment between them shall conform to standard.' Nothing in either provision gives any war-rant for saying that they are intended to provide a place of safety between colliding cars. On the contrary, they affirmatively show that a principal purpose in their en-actment was to obviate 'the necessity for men going be-tween the ends of the cars. [27 Stat. 531.]'

"We are of opinion that the deceased, who was not endeavoring to couple or uncouple the car or to handle it in any way but was riding on the colliding engine, was not in a situation where the absence of the prescribed coupler and drawbar operated as a breach of a duty im-posed for his benefit, and that the Supreme Court of the State erred in concluding that the Safety Appliance Acts required it to hold otherwise."

The Conarty Case was followed and approved in Lang v. Railroad, 255 U. S. 455. While the strict rule of the Conarty Case was not applied in Louisville & N. Railroad v. Layton, 243 U. S. 617, and Minneapolis Rail-road Co. v. Gotschall, 244 U. S. 66, still we must regard the Conarty Case, as followed in the Lang Case, as the latest word from the United States Supreme Court on the proposition.

The cases above referred to announce principles which we regard as most persuasive in construing the statute before us in this case. Even in the absence of such decisions which we regard as analogous, we are satisfied from the plain language of the statute itself that the injury received by appellant, even though it would not have occurred but for violation of said statute, is not one for which recovery can be had. The plain purpose of the statute is to prevent injury to the health of operators of emery wheels and other polishing wheels, due to the necessity of breathing into their lungs fumes, smoke, dust and poisonous gases generated by the fric-

tion between such polishing wheels and the surface to be polished. The statute was designed to promote the health of employees operating such machines by providing a means of carrying off such smoke, dust and gas by forced drafts of air or by suction. Following the conclusions reached by Baron POLLOCK in the Gorris Case, supra: Admit for the purposes of the case that defendant violated the express provisions of the statute requiring a hood and blower or suction fan; admit that the plaintiff's injury was received in consequence of defendant's failure to install such hood with blower or suction fan; still the Legislature was not legislating to protect employees against the danger of particles flying into their eyes, but for an altogether different purpose; its object was not to regulate the duty of employers for all purposes, but only for one particular purpose, to-wit, to *prevent inhalation of smoke, gas and dust* by those employed about such wheels.

The learned trial judge was correct in his construction of said statute and properly declared the law when he instructed the jury to return its verdict in favor of the defendant, and the resulting judgment should be and is affirmed. All concur.