**Willie E. GARRETT, Plaintiff-Appellant,**

v.

**E. I. DU PONT DE NEMOURS & COMPANY, Inc., a Corporation of the State of Delaware, Defendant-Appellee.**

No. 12426.

United States Court of Appeals
Third Circuit.

Argued April 3, 1958.

Decided June 30, 1958.

Herbert E. Greenstone, Newark, N. J. (Greenstone & Greenstone, Newark, N. J., on the brief), for plaintiff-appellant.

Thomas L. Morrissey, Jersey City, N. J. (Carpenter, Bennett, Beggans & Morrissey, Jersey City, N. J., Carl E. Geuther, Philadelphia, Pa., of counsel, Milton A. Dauber, Laurence Reich, Jersey City, N. J. on the brief) for defendant-appellee.

Before KALODNER and HASTIE, Circuit Judges, and LAYTON, District Judge.

LAYTON, District Judge.

This is an appeal by the plaintiff from a verdict in favor of the defendant in an action where plaintiff was badly burned by sulfuric acid as he was attempting to pour it out of a 55 gallon metal drum. Defendant had shipped the drum to plaintiff's employer, Otto B. May Co., by an intrastate shipment. The drum had been lying in plaintiff's employer's plant for twenty days when the accident occurred. It was the duty of the plaintiff, when required to do so, to draw off designated amounts of sulfuric acid from metal drums. While he was so engaged, he claims a defective bung dropped out of the drum allowing acid to pour onto his leg.

The plaintiff's important exception is to the exclusion by the trial Court of the testimony of expert witnesses bearing upon alleged violations by the defendant of certain I.C.C. regulations and also regulations issued by the Department of Labor & Industry of New Jersey which will hereafter be referred to as State regulations. The I.C.C. regulations in question dealt with the packing, labeling, handling, etc., of shipments of danger-

ous substances, including sulfuric acid, in interstate commerce. The New Jersey regulations dealt with the same subject matter insofar as concerned intrastate shipments. By 39:5B–1, New Jersey Revised Statutes, N.J.S.A., the New Jersey Department of Labor & Industry directed that all I.C.C. regulations in effect at the time of shipment with respect to the packing, labeling, handling, etc., of containers for dangerous substances be made applicable to the shipment of such substances upon the highways of New Jersey by motor vehicle, so that, mention of I.C.C. regulations hereafter will generally also include mention of the State regulations.

The plaintiff's theory was that all I.C.C. regulations dealing with the packing, labeling, handling, etc., of sulfuric acid represented standards of care of the chemical industry with the result that a violation of one or more of such regulations amounted to proof of negligence per se under the holding of Carlo v. Okonite-Callender Cable Co., 3 N.J. 253, 69 A.2d 734.[1] The plaintiff predicates his reasoning upon certain interrogatories propounded to the defendant which required it to state whether it had knowledge of any standards for care and shipment of sulfuric acid in steel drums known or recognized by the chemical industry. To this interrogatory the defendant replied that certain I.C.C. regulations were recognized in the industry as representing standards of care in the shipments of sulfuric acid and the manufacture of metal containers therefor.

At the trial the plaintiff placed experts on the stand to prove these I.C.C. regulations and to testify as to violations thereof by the defendant. Upon objection, the Court ruled out all such I.C.C. regulations except to the extent that certain of them were incorporated by reference in a pamphlet entitled:

"Chemical Safety Data Sheet Properties and Essential Information for Safe Handling and Use of Sulfuric Acid." (Defendant's Exhibit D–7).

Plaintiff's experts were permitted to testify as to those regulations which were incorporated by reference into Defendant's Exhibit D–7, setting out the standards of care for the industry, and also as to any other standards of care pertaining to the packing, labeling, etc., of sulfuric acid recognized by the industry whether or not mentioned in the pamphlet. Plaintiff objected to the exclusion of the testimony of his experts on all the remaining I.C.C. regulations referred to in the answer to his interrogatory upon the ground that the defendant, by its answer, had admitted that they represented standards of care governing the industry.

 We think, however, that the trial Court correctly limited defendant's liability to its common law duty to use due care and to its duty to comply with all safety standards recognized by the chemical industry relating to the packing, labeling, handling, etc., of sulfuric acid. Thus, Defendant's Exhibit D–7 representing the standards of care of the industry, together with all I.C.C. regulations incorporated by reference therein, were introduced into evidence and the plaintiff's experts were permitted to testify fully thereon and also as to any other standards of care relative to the packing, labeling, handling, etc., of acid recognized by the chemical industry whether or not included in Defendant's Exhibit D–7. True, the defendant in its answer to the interrogatory above referred to admitted that those regulations, about which the testimony of the experts was excluded, comprised known standards of care in the industry. It was not there-

---

1. In that case, a New Jersey statute required that containers for dangerous substances be labeled before being put into transit. The defendant failed to label one of these containers with the result that a shipping clerk employed by a motor freight line was injured when it exploded.

The New Jersey Supreme Court held that a violation of a safety statute resulting in injury amounted to negligence per se although all other applicable negligence principles such as contributory negligence, etc., remained in full force.

690

by admitting, however, that this plaintiff was within the class of persons entitled to their protection. We think that before being able to claim the benefit of these regulations, plaintiff had to show that he came within this class. As stated in Kelly v. Henry Muhs Co., 71 N.J.L. 358, 59 A. 23, 24:

"In an action based upon a neglect of duty, it is not enough for the plaintiff to show that the defendant neglected to perform a duty imposed by statute for the benefit of a third person, and that he would not have been injured if the duty had been performed. He must show that the duty was imposed for his benefit, or was one which the defendant owed to him for his protection."

Insofar as concerns the I.C.C. regulations in controversy, the plaintiff was not within the class of persons intended to be protected because their purpose is for the protection and safety of railway employees and of the public while shipments of a dangerous nature are in transit. Davis v. A. F. Gossett & Sons, 30 Ga.App. 576, 118 S.E. 773, 776.[2] And the same answer applies to the state regulations which, in fact, are one and the same as the I.C.C. regulations. The underlying New Jersey statute, Title 39, N.J.S.A. (in which I.C.C. regulations are incorporated by reference) is entitled, "Transportation of dangerous articles on highway." The key section (39:5B–11) provides that " * * * it shall be unlawful to ship or transfer * * * by motor vehicle over the highways of this State any dangerous article in such manner or condition as will unreasonably endanger the person or property of others * * *." Now, it is clear that this act deals with dangerous substances while in transit over the highways of New Jersey and it is axiomatic that regulations issued under such an act can have no wider application than the scope of the Act authorizing their promulgation. Thus, as we view it, these regulations were for the safety of the public and the employees of motor carriers while dangerous goods were in transit (compare Davis v. A. F. Gossett & Sons, supra) and not for the protection of this plaintiff, being the employee of a consignee who was injured twenty days after the drum had been delivered into the possession of Otto B. May, Inc., plaintiff's employer.[3] Plaintiff, then, was

2. "The manifest purpose, then, * * * of the rules promulgated by the Commission (I.C.C.) * * * is, not for the protection or advantage of either the shipper or the consignees, but solely for the protection and safety of railway employees and of the public from any accidents arising from the movement of shipments defined as dangerous, during the course of their transportation * * *."

3. As a matter of fact, for reasons not given, the trial Court permitted the introduction of all these controverted I.C.C. regulations at the end of the trial. While this, without explanation by the Court, may have proved somewhat confusing to the jury, the plaintiff was prejudiced no more than the defendant. Moreover, a reading of the record as a whole convinces us that there was a tendency to place undue emphasis on these regulations rather than the common law duty of the defendant to use due care under all the circumstances, including its duty to abide by the standards of care recognized by the industry as a whole in the packing, labeling, etc., of sulfuric acid. There

was evidence on the part of the plaintiff that the threads on the metal drum in question were badly worn in which event, had the jury believed the evidence, it would have been justified in returning a verdict for the plaintiff. There was evidence for the defendant that would have justified the jury in believing that the bung in question was not the one on the barrel at the time of the accident and, moreover, that the plaintiff was guilty of contributory negligence. As the trial judge perhaps appropriately remarked after a particularly long wrangle between counsel about the admissibility of these regulations: "What you gentlemen seem to forget is this: That the I.C.C. regulations do not control to the extent of relieving the defendant of ordinary care, of the care that would be required in the handling, the packing, the transportation, the general use of the particular dangerous liquids involved. You tilt a great deal at windmills, it seems to me." The fact is, although not mentioned either at the trial or on the appeal, the trial Court might well have admitted all these

in a different category from the person injured in Carlo v. Okonite-Callender Cable Co., with the result that the rationale of that case is not applicable here. We conclude, therefore, that no substantial error was committed in excluding the testimony.

The plaintiff has advanced several other reasons for a reversal which we will answer briefly in view of the fact that they are of little substance.

■ First, he complains that the trial Court refused his prayers numbered 31 and 32 dealing with imputed negligence. From this refusal defendant argues that the jury may have erroneously been led to believe either (a) that the contributory negligence of plaintiff's employer or of a fellow worker would be imputed to plaintiff or (b) that if such contributory negligence were found to exist, this would relieve defendant of all liability. We do not agree. Concededly, the Court charged that if the negligence of some third party intervened as the sole proximate cause of the accident, then the defendant would not be liable. But he also charged, "If you find that there were several contributing proximate causes and you find that the defendant, under the rules I have given you, was guilty of negligence which was a contributing proximate cause, the defendant would be liable, alone or with others, for the resultant damage." In our judgment, the charge clearly and correctly explained the law in both respects.

■■ There is also raised the point that the charge was prejudicial because the Court stated in its charge:

"If your minds are in equipoise— in other words, if you cannot say in all honesty that there is preponderating evidence in favor of the plaintiff—then although it may seem very difficult and very hard, you must find in favor of the defendant. You see, the danger in cases of this kind is that jurors may be swayed by sympathy or bias or prejudice. Let me tell you that a biased, sympathetic or prejudiced verdict is a perversion of justice. You must prescind any affections that you may have in this matter, any feelings you may have, and be reasonable and logical about your determinations. Somebody must be hurt, and only that person must be hurt who properly should be hurt. *Sometimes there is a tendency on the part of jurors to say, 'Well, it's a big corporation; what difference does it make?' That is unfair because a corporation is not just a thing—it is made up of people whose earnings are invested in it.* And you mustn't feel that way. You are here to do justice between two parties. I know that it is difficult, as I have told you, to strike an even balance but in so far as you are able, that you must do." (The language particularly objected to is emphasized.)

The objection is overruled for two reasons: (1) plaintiff failed to take exception to it [4] and, (2) while the language excepted to might well have been phrased in more general terms, nevertheless, it was not so prejudicial as to amount to reversible error. Compare Burch v. Reading Company, 3 Cir., 240 F.2d 574.

There are two final exceptions: (a) that the plaintiff's attorney was not permitted to read to the jury the list of witnesses subpoenaed by the defendant in order to place himself in a position to comment on the fact that many of them were not called, and (b) that defendant's expert, Foulger, was not permitted to finish an answer which the plaintiff interpreted as being favorable to him.

controverted regulations *to the extent they were relevant* upon the theory of judicial notice. McCormick on Evidence, Hornbook Series, p. 695. But we have elsewhere restricted the relevancy of the regulations to those incorporated into Defendant's Exhibit D–7.

4. While Rule 51 Fed.Rules Civ.Proc., 28 U.S.C. does not specifically include this sort of objection, we feel that it comes within the spirit of the Rule.

As to the first, we think that the record was in such condition that the plaintiff, had he wished, could have commented upon the fact that the defendant did not call all its witnesses. In any event, the objection is lacking in real substance. As to the second, we believe it obvious that the witness had in substance answered the question when he was interrupted. The answer was not stricken but was allowed to stand. We see no prejudice here.

An Order will be entered affirming the judgment below.