Eldon C. ODEKIRK, Plaintiff-Appellant,

v.

SEARS ROEBUCK & CO., a corporation and Vaughn & Bushnell Mfg. Co., a corporation, Defendants-Appellees.

No. 12742.

United States Court of Appeals
Seventh Circuit.

Feb. 5, 1960.

Rehearing Denied March 3, 1960.

442

Oswell G. Treadway, Joseph H. Hinshaw, Perry L. Fuller, Chicago, Ill., Raymond R. Colwin, Fond Du Lac, Wis., for appellant.

Charles D. Snewind, Albert M. Howard, Chicago, Ill., for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

Plaintiff brought this action to recover damages attendant on personal injury, in loss of the sight of one eye. Plaintiff charged that defendant, Vaughn & Bushnell Mfg. Co., hereinafter called "Vaughn", who manufactured "Craftsman" hammers, and defendant, Sears Roebuck & Co., hereinafter called "Sears", who sold these hammers under the trade name, as though they were manufactured by Sears, and who prepared specifications for and supervised their manufacture, both expressly and impliedly warranted the hammers to be so manufactured and fabricated as to be reasonably fit for the purposes for which such hammers were used and free of defects rendering them inherently or imminently dangerous. He charges that they breached said warranties; that one of two such hammers purchased by him in reliance on the warranties was manufactured from defective steel stock, as a result of which it became an inherently dangerous instrumentality because it was cracked, brittle, and liable to chip; that while plaintiff was using the hammer, in the exercise of ordinary care for his own safety, the hammer chipped, and a portion of it pierced his left eye, causing the injury of which he complains.

Plaintiff lists negligent acts of Vaughn as: carelessly and negligently manufacturing the hammer, failing to use good and proper steel therefor, fabricating it from "grossly segregated and defective steel stock," failing to test it properly, improperly tempering it in manufacture, and permitting it to be sold in defective condition.

Plaintiff lists negligent acts of Sears as: carelessly and negligently permitting the hammer to be improperly manufactured, permitting it to be manufactured of defective steel stock, failing to inspect it properly, failing to test it properly, selling it in a dangerous condition, and selling an inherently dangerous instrumentality.

In their answer, defendants denied making any of the alleged warranties, and asserted that plaintiff was guilty of contributory negligence, in excess of 50% of any negligent acts committed, as a proximate result of which he had sustained the alleged injuries.

The evidence showed that Vaughn manufactured the hammer in question and that Sears sold it by catalog in which it was described as follows:

"Perfect balance assures you of a right 'feel' and easy swing. Has flared rubber tip for sure grip.

Spaced claws grip from brads up to large nails. Double steel wedge locks head tight. Head polished; beveled face resists chipping. Head is drop forged from 'supertuff' steel, heat treated and hardened. Finest grade white hickory handle * * *."

The evidence shows no other representation made to plaintiff by either defendant.

Plaintiff testified that he was engaged in remodeling a frame structure, in Campbellsport, Wisconsin, on his own time and for his own use. He was mounted on a scaffold composed of a plank laid across two ladders, attempting to remove and preserve for future use, a 1 x 4 inch board, fastened to the studding with one or two nails on each studding, about twelve feet above the floor. With his left hand, he placed the claws of one hammer up against one of the nail heads, and (in order to drive the claws of that hammer under the nail) he struck the striking face of that hammer with the striking face of the other hammer, held in his right hand. At the second blow, he felt an object enter his left eye. He then examined the hammers and saw that the striking face of the hammer in his right hand had chipped and that the chip was missing. X-rays showed a piece of metal lodged in the back of plaintiff's left eye socket near the optic nerve.

Plaintiff testified that while he was in the hospital he (and others) were laid off by the Soo Line Railroad Company, his employer. When he was called back to work about four months later, he was discharged as being a safety hazard. He was subsequently turned down for other jobs for which he applied, but, at the time of trial, he had obtained employment as a mechanic.

The Trial Court required the jury to return a special verdict. Most of the alleged errors concern this special verdict. Plaintiff contends that the Trial Court erred (1) in failing to submit to the jury the respective issues regarding the several breaches of warranty, and the individual charges of negligence by

Sears and Vaughn, as alleged in the complaint and as denied in the answer, (2) in submitting issues as to percentage of causal negligence attributable to each defendant (instead of to both together), (3) in submitting the issue of contributory negligence on the part of plaintiff, it being plaintiff's position that there was no evidence at all of any contributory negligence by him, (4) in instructing the jury so as to increase the burden of proof beyond that required by law with respect to preponderance of evidence, and (5) in failing to instruct regarding *res ipsa loquitur*. Thus plaintiff lists the contested issues as:

"1. Whether the special verdict which the trial court required the jury to return conformed to the requirements of Rule 49 of the Rules of Civil Procedure, 28 U.S.C.A.

"2. Whether the answers to the questions propounded in the special verdict were responsive to the issues raised by the pleadings.

"3. Whether the plaintiff was guilty of contributory negligence.

"4. Whether the jury was properly instructed as to the burden of proof and the preponderance of the evidence.

"5. Whether the jury was entitled to the instruction on the applicability of the doctrine of *res ipsa loquitur*."

We do not reach most of these issues because our decisions respecting issues 3 and 4 are dispositive of the whole case.

The jury found, in part, as follows:

"8. Was the plaintiff, Eldon C. Odekirk, negligent in the manner he was using the particular hammer at the time of the accident in question? Answer: Yes.

"9. If you answer Question No. 8 'yes', then answer this question: Was the negligence of plaintiff, Eldon C. Odekirk, as found by you in answer to Question No. 8, an efficient cause of the accident and of plaintiff's injuries with respect to the manner of using the particular

hammer at the time of the accident in question? Answer: Yes.

"10. If you answer * * * Question No. 9, 'yes', then answer this question: Taking the total causal negligence as 100%, what percentage of that total causal negligence causing the accident do you attribute to—

"(a) The defendant, Sears Roebuck and Co.? Answer: 0%.

"(b) The defendant, Vaughn & Bushnell Manufacturing Co.? Answer: 0%.

"(c) The plaintiff, Eldon C. Odekirk? Answer: 100%."

■ There were conflicts in the testimony of the witnesses which raised questions of fact. However, there was ample evidence to support the findings which the jury made with respect to these questions of fact. For example, detailed evidence was submitted concerning manufacture of this type of hammer, including test methods and inspections. Plaintiff's witness, Dr. David Joseph Mack, Professor of Metallurgical Engineering at the University of Wisconsin, testified to dirt segregation in the chipped area, which, he said, decreased the shock resistance or impact strength of the hammer. On the other hand, defendants' witnesses, Myron A. Jones, metallurgist for Youngstown Sheet and Tube Co., and Ira M. Goff, Professor of Metallurgy and Engineering at the Illinois Institute of Technology, found no defect in the hammer. Plaintiff's own testimony indicated that he did not consider the hammer warranted never to chip. When asked what he understood from the statement in the catalog, quoted above, "Beveled face resists chipping," he said that "It implied that it could chip."

■ Both plaintiff and defendants objected to the form of Question No. 10 in the special verdict in that it listed Sears and Vaughn separately rather than as one entity. We believe this objection had merit. If the Wisconsin Comparative Negligence Statute is applicable (Ch. 331, Sec. 331.045) then plaintiff's recovery would have been barred had his causal negligence been greater than that of the two defendants together. If the Illinois rule is applicable, contributory negligence in any degree bars recovery. In the light of the jury's finding of 100% negligence on the part of plaintiff, the separate listing proved harmless error.

Plaintiff's witness Larry Burkholter, a journeyman carpenter, of twelve years' experience, employed as a carpenter foreman at the time of the trial, testified that it was an ordinary customary procedure accepted by carpenters to strike the face of one hammer against another "to start a piece of board that is nailed securely loose from the member it is nailed to." Defendant's witness, Ernest H. Cirou, also a journeyman carpenter of eleven or twelve years' experience and an instructor of carpenter apprentices in a trade school since 1947, testified that attempting to get the claw of one hammer under a nail imbedded in a board by striking its face with another hammer was not a proper use of a carpenter's hammer. Edward C. Howe, Jr., an officer of Vaughn, testified that the type of hammer used here could be made to chip if struck against another hard object and that it would more readily chip if struck at an angle. Plaintiff testified that he had taken a woodworking course in high school, but that he had little occasion to use a hammer in that course. He testified further that while in the Army, he had been an aircraft mechanic and had attended aircraft school. When asked whether anyone ever told him not to hit hard metal against hard metal, he replied that he did not believe so. At the time of the injury, July 11, 1954, plaintiff had been employed by the Soo Line Railroad, since about April 19, 1954. On cross examination, plaintiff denied ever seeing instructions on proper use of tools, specifically an instruction booklet cautioning against striking one hardened surface against another hardened surface without putting a piece of copper, aluminum or wood between the surfaces to soften the blow. He said he was posi-

tive that he had no such instruction, and when shown the safety rule booklet in question, said he had received no such booklet. He did identify his signature on a receipt for a safety rule booklet dated April 19, 1954. Edmund E. Widing, Assistant Manager of Personnel and Safety for the Soo Line Railroad, testified that plaintiff had been presented with and had signed for receipt of copy No. 4385 of the safety rules booklet distributed to each new employee of the mechanical department.

We cannot agree with plaintiff's assertion that the jury's finding of negligence on his part was erroneous as a matter of law. Apart from any evidence as to instruction given plaintiff or evidence of the general practice of carpenters, the jury was given a detailed account of his actions by plaintiff himself, including the equipment available to him, the equipment used by him, and all the attendant circumstances, from which the jury might make its own determination of fact.

All parties agree that the criterion for determination of contributory negligence is what an ordinary prudent person would or would not do under like or similar circumstances. Ditter v. Yellow Cab Co., 7 Cir., 1955, 221 F.2d 894. On application of that criterion to the evidence adduced at the trial, the jury could properly find, as they did, that plaintiff was negligent in the manner in which he was using the particular hammer at the time of the accident.

Plaintiff contends that the jury were improperly instructed as to burden of proof and preponderance of evidence. Plaintiff objects to the Trial Court's charge as follows:

"In the course of these instructions the terms 'burden of proof' and 'preponderance of the evidence' will be used.

"I shall, during the course of these instructions, designate the party upon whom the 'burden of proof' rests with reference to the respective questions. When you are in-structed that the burden of proof rests upon a party, it means that the duty devolves upon that party to satisfy or convince the minds of the jury, by a clear preponderance of the evidence of the truth of that party's contention.

"By 'preponderance of evidence' is meant the evidence which possesses greater weight or convincing power. The evidence of the party upon whom the burden of proof rests must satisfy or convince the minds of the jury before the burden of proof is discharged.

"The preponderance of evidence is not alone determined by the greater number of witnesses testifying to a particular fact or state of facts. It is determined by the testimony which impresses your mind and reason as possessed of the most weight and as presents the most reasonable account of the matter in dispute."

It is plaintiff's position that repeated use, in the above and similar instructions, of the words "satisfy", "convince", "convincing", and "clear preponderance", constituted prejudicial error. In support of this position, plaintiff cites a number of Illinois cases on the theory that in diversity cases, such as this one, the law governing burden of proof is that of the state of Illinois, the state in which the Court was sitting. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. The procedural law is the law of the forum. The forum here is a federal district court, not a court of the state of Illinois. Although a state-created right may be enforced in a federal court because of diversity of citizenship, the federal court will proceed by its own rules of procedure, acquired from the federal government, and, therefore, not necessarily identical with those of the courts in the state in which the federal court is sitting. Byrd v. Blue Ridge Rural Elec. Co-op., 1958, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953, rehearing denied 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375.

■ The District Court's charge to the jury must be considered as a whole to determine whether prejudicial error arose out of the instructions. Affleck v. Chicago & N. W. Ry. Co., 7 Cir., 1958, 253 F.2d 249, 251, 68 A.L.R.2d 982. From a reading of the instructions as a whole, we see no support for plaintiff's conclusion that the jury was misled as to the burden of proof to be sustained or as to the meaning of the term "preponderance of the evidence". The jury must be satisfied or convinced that the preponderance of the evidence supports an affirmative answer before the jury may answer any question "yes". Although as a general rule it is well to avoid such terms in civil cases, the use of the words to which plaintiff objects did not, in our opinion, constitute prejudicial error in the context of the whole charge. Garrett v. E. I. DuPont, 3 Cir., 1958, 257 F.2d 687, 691; Burch v. Reading Co., 3 Cir., 1957, 240 F.2d 574, 579, certiorari denied 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914; Larson v. Jo Ann Cab Corp., 2 Cir., 1954, 209 F.2d 929, 935.

■ Plaintiff contends further that the jury must have been confused by the use of the term "efficient cause" for "proximate cause", and argues that while a proximate cause is an efficient cause, all efficient causes are not necessarily proximate causes.

The Court said:

"You will observe that this question uses the words 'efficient cause'. An 'efficient cause' means an actual working cause, a cause which constitutes a substantial factor in producing an injury as an effect or a natural result thereof. In order that an injury may be said to be a natural result of negligence, there must be a close physical connection between the negligent act or omission and the injury. It must appear that the negligence of the party is a cause which actually brought about the injury as a natural result of such negligence. It is possible of course that there may be more than one cause of an injury. You are asked in this question to determine whether a specific act of negligence was one such cause."

We do not find this a confusing instruction. It seems very clearly stated.

■ Plaintiff also argues that the instruction following question No. 8 virtually told the jury that plaintiff had selected a dangerous way to do his work. Question No. 8 was:

"8. Was the plaintiff, Eldon C. Odekirk, negligent in the manner he was using the particular hammer at the time of the accident in question?"

It was shortly followed by the instruction that:

"* * * if you find from a preponderance of the credible evidence that the plaintiff had a choice of ways in which to do his work and carelessly selected a dangerous way, he was negligent. The plaintiff was under the obligation to use for his own safety such care and caution as an ordinarily reasonable, prudent and intelligent person would have used under like circumstances. You are to determine whether the plaintiff at the time of the occurrence herein did use such ordinary care. If he did not, he was negligent.

"The defendants assert that the hammer in question was used for a purpose for which it was not intended and that in so using the hammer the plaintiff was negligent. In this regard you should take into consideration the use or uses to which an ordinarily prudent person would subject a hammer of this type. You should consider the customary use or uses to which such a hammer is ordinarily put. If it was, as defendants assert, improperly used by the plaintiff at the time of this accident, the plaintiff was negligent.

"The burden of proof on Question No. 8 is upon the defendants. If the defendants have convinced you by a preponderance of the credible evi-

dence that Question No. 8 should be answered 'Yes' you will so answer it. If you are not so convinced, you will answer it 'No'."

We cannot agree with plaintiff's interpretation of the instruction. We find nothing in it misleading or likely to be misleading.

Other contentions advanced by plaintiff have been examined and found to be without merit.

We find no reversible error. The judgment of the District Court is

Affirmed.