**George WILLIAMS, Plaintiff,**

v.

**HILL MANUFACTURING COMPANY, INC., Defendant.**

**Civ. A. No. 79–664.**

United States District Court,
D. South Carolina,
Charleston Division.

Feb. 1, 1980.

John E. Parker, Hampton, S.C., for plaintiff.

William H. Grimball, Charleston, S.C., for defendant.

HEMPHILL, Chief Judge.

Plaintiff has brought a tort action against defendant alleging that a drum of explosive chemical, Xylene, was negligently and improperly labeled[1] which resulted in an explosion which injured plaintiff when he was directed to cut upon an empty drum in order to make a trash can. Defendant has moved to strike that portion of the complaint which alleges that defendant was negligent, "In violating the Department of Transportation's rules and regulations concerning the shipment of flammables," on grounds that defendant is not a member of the class meant to be protected by the regulations in question. Oral argument was presented to this court in Charleston on January 28, 1980, and after consideration of the briefs and arguments of counsel, this court finds that said reference to the Department of Transportation's rules and regulations should be stricken.

Plaintiff was an employee of the Town of Hampton, S. C., when this accident occurred. Defendant had shipped a 55 gallon drum containing a herbicide called Xylene, to plaintiff from its plant in Atlanta, Georgia, some fourteen months before. Plaintiff was injured when he attempted to remove the end of the drum with a cutting torch. The drum was empty, and had been for some time, but allegedly contained explosive vapors.

The effect of conduct which violates certain statutes designed to provide for the safety of others varies from jurisdiction to jurisdiction. A violation of the enactment may constitute negligence per se, or create a presumption of negligence, or make out a prima facie case of negligence, or constitute evidence of negligence, depending on the legal doctrine followed in the given jurisdiction. 57 Am.Jur.2d "Negligence," §§ 234, 239.

In determining whether a civil action may be based upon the violation of a statute, the courts apply one or more of a number of tests, all of which seem to embody the same general idea. Three of the most commonly applied are: (1) Whether the legislature intended to create a private liability, as distinguished from one of a

1. The other causes of action set forth in the complaint are not relevant to this motion.

public character; (2) Whether the person injured is a person or a member of a class for whose benefit or protection the law is enacted; and (3) Whether the injury complained of was such as the enactment was intended to prevent. 73 Am.Jur.2d "Statutes," §§ 432, 433, 438; 57 Am.Jur.2d "Negligence," §§ 238, 253; Restatement, Torts 2d §§ 286, 288 (1965).

If any one of these tests is not satisfied, the courts will not adopt the requirements of the legislative enactment as the standard of conduct of a reasonable man. 57 Am. Jur.2d "Negligence," §§ 238, 253. In such case, violation of the statute is neither negligence per se nor even evidence of negligence, and can have no effect on liability at all. Thus, in the case of *Labbee v. Roadway Express, Inc.*, 469 F.2d 169 (8th Cir. 1972), the Court of Appeals upheld the trial court's refusal to instruct the jury regarding the effect of a safety provision of the United States Department of Transportation. In doing so, the court wrote:

> Missouri is one of those states where violation of a statute of this kind is evidence of negligence in a civil action. . . . However, before such a violation may be evidence of negligence, it must be shown that the statute was intended to protect against the sort of harm that occurred.

469 F.2d at 171.

So also, in *Mead v. Parker*, 340 F.2d 157 (6th Cir. 1965), the Court of Appeals agreed with the trial court that the parking of a vending truck on the wrong side of a city street in violation of the municipal ordinance did not constitute negligence as to the plaintiffs for the reason that the ordinance was for the control and benefit of vehicular traffic and not for the protection of pedestrians, and that the plaintiff child was not a beneficiary of the ordinance. 340 F.2d at 158.

In accord, *Robertson v. Yazoo & M.V.R. Co.*, 154 Miss. 182, 122 So. 371 (1929); *Mansfield v. Wagner Electric Mfg. Co.*, 294 Mo. 235, 242 S.W. 400 (1922); *Carter v. Redmond*, 142 Tenn. 258, 218 S.W. 217 (1920). *Contra, Butler v. L. Sonneborn & Sons, Inc.*, 296 F.2d 623 (2d Cir. 1961).

In South Carolina, the violation of an applicable statute is "negligence per se." *Eickhoff v. Beard Laney, Inc.*, 199 S.C. 500, 20 S.E.2d 153, 141 A.L.R. 1010 (1942). And it is clear that with regard to this rule, South Carolina has adopted the statutory purpose doctrine and has used the three tests enumerated above in applying it. See *Taggart v. Home Finance Group, Inc.*, 239 S.C. 345, 123 S.E.2d 250 (1961); *Bell v. Atlantic Coast Line R. Co.*, 202 S.C. 160, 24 S.E.2d 177 (1943); *Smoak v. Martin*, 108 S.C. 472, 94 S.E. 869 (1918); *Griffin v. State Highway Department*, 170 S.C. 403, 170 S.E. 459 (1915); 11 S.C.L.Q. 207 (1959). See also 57 Am.Jur.2d "Negligence," § 260 at 644–45.

A typical example appears in *Hutto v. Southern Ry. Co.*, 100 S.C. 181, 84 S.E. 719 (1915), where the Supreme Court applied both the second and third tests. Here the plaintiff alleged as the only grounds of negligence on the part of the defendant that the defendant violated a section of the South Carolina Code requiring the sounding of a train bell and whistle five hundred (500) yards from railroad crossings or public places. The only issue in the case was whether the defendant's negligence, in failing to give the signals required by the statute at such crossings, gave the plaintiff a cause of action where the plaintiff was working in a field near the railroad track and about two hundred (200) yards from the crossing when injured by the fright of his horse caused by the passing of a train which had failed to give the crossing signal. The court ruled that the statute was not enacted for the protection of persons in the plaintiff's position and that the defendant owed no duty to the plaintiff because the plaintiff's injury had no connection with the use or intended use of the crossing. The court mentioned that had the case been brought under the common law principles, proof of the failure to give signals at a crossing could have been admitted as competent evidence in support of the charge of negligence, but that the statute itself was inapplicable.

In applying the statutory purpose doctrine in this case, it is necessary to examine the Transportation Safety Act of 1974 and in particular Chapter 27, governing hazardous materials. The initial thing to note is that Chapter 27 of the Act is entitled "Hazardous Materials *Transportation*" (emphasis added). The first section of this Chapter sets forth a congressional declaration of policy and states that:

> It is declared to be the policy of Congress in this chapter to improve the regulatory and enforcement authority of the Secretary of Transportation to protect the Nation adequately against the risks to life and property which are inherent in the *transportation* of hazardous materials *in commerce.* (Emphasis added.)

Throughout this Chapter it appears that it was enacted with the intention of preventing harm to persons as a result of accidents while hazardous materials are in transit. This purpose is made more apparent by reviewing the legislative history of this Chapter, which is found in 1974 *U.S.Code Cong. and Admin.News*, p. 7669. In that portion of the legislative history entitled "Background and Need," it is clear that the need for greater rail safety was the primary moving element in the passage of the Act. Typically, under the heading "Hazardous Materials in Transportation," the report indicates that:

> One of the most dramatic illustrations of the need for upgrading track and roadbed conditions in the American rail industry involves incidents where dangerous cargo is carried on unsafe track. *1974 Cong. and Admin.News* at 7675.

Nowhere in Chapter 27 of the Hazardous Materials Transportation Act nor in its legislative history is there any mention of concern for post-transportation danger or injuries, particularly with regard to burning or cutting of containers used in the transportation of hazardous materials.

In *Garrett v. E. I. DuPont De Nemours & Co.*, 257 F.2d 687 (3rd Cir. 1958), the Third Circuit Court of Appeals reviewed the decision of the trial court judge to exclude evidence from expert witnesses upon alleged violations by the defendant of certain I.C.C. regulations. The plaintiff was badly burned by sulfuric acid as he was attempting to pour it out of a 55 gallon metal drum. The drum had been lying in plaintiff's employer's plant for twenty days when the accident occurred. Concerning the testimony about the I.C.C. packing, labeling and handling regulations, the Third Circuit found that plaintiff was not in the class entitled to their protection. Quoting:

> Insofar as concerns the I.C.C. regulations in controversy, the plaintiff was not within the class of person intended to be protected because their purpose is for the protection and safety of railway employees and of the public while shipments of a dangerous nature are in transit.

*Id.* at 690. See also *Davis v. A. F. Grossett & Sons*, 30 Ga.App. 576, 118 S.E. 773 (1923).

In researching the regulations involved, it becomes clear that plaintiff's theory that consignees and their employees are entitled to the benefits of the regulations, is erroneous for the reasons cited in *Garrett* and *Davis, supra.* The regulations contained in 27 C.R.F. § 172.1 *et seq.* are completely concerned with goods in interstate commerce which are in transit. While strict requirements are set forth as to labeling of goods which are presented for shipment, or are in shipment, at no point are any requirements as to post-shipment labeling propounded. A consignee may remove or obliterate labels or marks immediately upon receiving them at his place of business, and not violate the regulations. Certainly plaintiff cannot bring himself within the regulations after the container had lain about on his employer's property for over a year.

Plaintiff alternatively urges this court to allow evidence of the Department of Transportation's regulations as tending to prove minimum standards for the industry in the labeling of hazardous materials. The Second Circuit has authorized the use of regulations by persons not in the precise class to be protected, "wherever the situation envisaged by the legislature and that in the case at bar are analogous enough, so

**24**

that the ordinary canons of relevancy are met." *American Law Institute, Restatement of Torts*, 2d, §§ 288 and 288B (Ten. Draft No. 4, April 15, 1959) quoted in *Butler v. L. Sonneborn Sons, Inc.*, 296 F.2d 623 (2d Cir. 1961). Plaintiff's offer of proof, however, fails to meet the relevancy standard. The issue is defendant's duty to warn, a duty which arises out of the common law duty to avoid endangering the public. While violations of certain regulations may be relevant to the existence and violation of such a duty, a regulation which is only concerned with in transit items is of no relevance to any duty flowing to plaintiff. As stated earlier, the Department of Transportation regulations would have permitted removal of the mark by plaintiff's employers, hence they have no bearing on, and give no indication of, an alleged duty to properly appraise plaintiff of the danger to him.

As a consequence, the reference to the Department of Transportation regulations must be stricken from the complaint. Plaintiff is not a member of the class to be benefitted, therefore the alleged failure to label as required by 27 C.F.R. §§ 172.1 *et seq.* would not constitute negligence *per se.* In addition, the regulations have no relevance to the setting of minimal industry standards on warnings to those expected to use the chemical. There being no further use for the regulations, their existence will be withheld from the attention of the jury by striking all references in the complaint.

The motion to strike is granted.

AND IT IS SO ORDERED.