**Bernard Guttman, Plaintiff-Appellant, v. Salvatore Salvaggio, Defendant-Appellee.**

**Gen. No. 52,979.**

First District, First Division.

December 8, 1969.

Marshall Kaplan for Kaplan and Kaplan, of Chicago, for appellant.

Carl Scub, of Chicago, for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a two-count complaint, plaintiff seeks damages allegedly caused by the defendant in giving medical treatment to the plaintiff without being licensed to practice medicine. Count I is based on negligence, and Count II is based on malice and seeks punitive damages. At the close of plaintiff's evidence the trial court directed a verdict in favor of defendant on both counts. On appeal plaintiff contends that he presented a prima facie case sufficient to submit both counts to the jury.

In 1960 plaintiff, a certified public accountant, and his wife, a registered nurse, resided at 6739 South Clyde Avenue, Chicago. The defendant and his family lived on the third floor directly above plaintiff's second-floor apartment. In 1944 the Department of Registration and Education of Illinois denied defendant's application to practice medicine in Illinois.

Plaintiff testified that in May, 1959, defendant's wife introduced plaintiff to defendant and said, "This is my husband, Doctor Salvaggio." The name on the defendant's doorbell was "Dr. Salvatore Salvaggio." In August or September, 1960, plaintiff's wife cut her finger and went up to the defendant's apartment, and defendant

bandaged her finger. Defendant was not paid for this, nor did he send a bill.

On Friday, December 9, 1960, plaintiff became ill. He had chills, he was coughing a lot, and he went to bed. He stayed home and in bed for the next three days, but his condition did not improve, and he had a temperature of 101°. On Tuesday, December 13, 1960, his condition was unchanged and, failing to reach his family doctor, he telephoned defendant and asked for an examination. Defendant had plaintiff strip to the waist and examined plaintiff with a stethoscope and made finger tappings in the same manner as by a medical doctor. Defendant also examined plaintiff's throat, took his temperature and pulse, put a hypodermic needle in him, telling him he was giving him a shot of penicillin, and gave him some tablets to take every three hours. He diagnosed plaintiff's condition as a cold. Plaintiff saw defendant professionally five more times in the next three days, during which he was examined by defendant, given capsules, an injection of streptomycin and a partially filled bottle of liquid described by defendant as an expectorant. On December 16, 1960, defendant examined plaintiff and informed plaintiff that he could leave his apartment to attend to such personal duties as going to the cleaners, getting a haircut, going to the dentist and to a convocation at the University of Chicago. Defendant testified that during all of this time his temperature remained at 101°. He offered to pay defendant for his services, but defendant did not submit a bill or request or receive any compensation from the plaintiff. They did not see each other after Friday, December 16, 1960.

On December 18, 1960, because his condition persisted, plaintiff consulted with Dr. Noah H. Sloan. His condition was diagnosed as viral pneumonia, and he was hospitalized. He was in the hospital from December 18, 1960, until February 11, 1961.

Defendant, called under section 60 of the Civil Practice Act, testified that he was not licensed to practice medicine in Illinois. He had received degrees from two unaccredited medical schools and was employed as a medical technician by the Elston Medical Center, where his duties were to take X rays, dress wounds and take the temperature of patients, and see that the mail got out properly. He substantially corroborated plaintiff's testimony. He denied that he injected plaintiff with penicillin, and admitted giving plaintiff penicillin capsules and telling him when to take them. He did not tell plaintiff that he was not a qualified medical doctor because "he never asked me." He saw plaintiff on only two occasions and never asked for any compensation for his services.

Dr. Sloan testified that he saw plaintiff at home on December 18, 1960. Plaintiff had pneumonia, and he sent him to a hospital. Dr. Sloan also testified as to his treatment of plaintiff and his charges for his services.

Dr. Sloan was asked three hypothetical questions by the plaintiff: one as to the kind of examination properly required to have been given plaintiff prior to his hospitalization, another as to the causal relation as to the treatment and the condition of ill-being, and a third as to whether the treatment of plaintiff might or could have aggravated or adversely affected the condition of the hypothetical man as found on December 13, 1960. Dr. Sloan answered the first question by saying that the treatment was not of the kind required of skilled doctors in Chicago in December, 1960; that he could not answer the causal connection question, and that there may or may not have been an aggravation of a preexisting condition.

On the causal connection question Dr. Sloan's answers included: "It's a nebulous sort of thing. . . . Well, I don't think the alleged doctor produced the disease. . . . The natural history of pneumonia is a very difficult

379

thing to know, because when a given point in time, you have pneumonia—but, what happened a day or six days before, or two months before, you don't know." In response to a question, "Might or could that previous treatment, prior to the treatment of December 18, adversely affect it—might or could it?", Dr. Sloan said, "It may, or may not be. . . . I have no way of knowing."

At the end of plaintiff's case, and after hearing from both counsel, the court directed a verdict for defendant as to both counts. Thereafter the trial court denied a post-trial motion of plaintiff and incorporated in his ruling a four-page " 'Opinion of the Court' in support of his ruling."

■ ■ At the outset, we think the basic guidelines to be used here are set forth in Gault v. Sideman, 42 Ill App2d 96, 191 NE2d 436 (1963), and Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967). In Gault, it is said (p 104):

> "In 34 ILP Trial, section 133, it is stated that a motion to direct a verdict for defendant should be allowed if when the evidence is considered in its aspects most favorable to the plaintiff, together with all reasonable inferences to be drawn therefrom, there is a total failure of proof on one or more essential elements of the case. Lindroth v. Walgreen Co., 407 Ill 121, 130."

In Pedrick, it is said (p 510):

> "In our judgment verdicts ought to be directed and judgments n. o. v. entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand."

380

■ Plaintiff contends that "there was more than enough evidence to support a verdict for the plaintiff let alone foreclose the possibility of the Court's taking the case from the jury by the process of directing a verdict against the plaintiff." Plaintiff asserts that the defendant, during the time he treated plaintiff, acted as a doctor, gave advice and orders like a doctor and responded repeatedly to being addressed as a doctor, and told plaintiff that his condition had improved so that he could get out of bed and attend to his usual affairs, when in fact the plaintiff was very ill and was diagnosed as having viral pneumonia less than twenty-four hours after what was tantamount to a release by the defendant. Plaintiff also notes that the Illinois Department of Registration and Education denied three applications of defendant to be licensed as a medical doctor, and that defendant did not deny certain allegations in plaintiff's complaint concerning defendant's treating various other persons, and allegations not specifically denied must be deemed admitted. People ex rel. Scott v. Kerner, 32 Ill2d 539, 208 NE2d 561 (1965).

■ Plaintiff further contends that the testimony of plaintiff, plus the admission of defendant in his pleadings and his testimony that he was not a licensed medical doctor, was enough to go to the jury, since this presented a violation of the Medical Practice Act and was prima facie evidence of negligence. (True & True Co. v. Woda, 201 Ill 315, 317, 66 NE 369 (1903) ; Smith v. Ohio Oil Co., 10 Ill App2d 67, 72, 134 NE2d 526 (1956).) Plaintiff notes that the purpose of the Medical Practice Act is to regulate the treatment of human ailments for the better protection of public health, and it is designed to require all persons treating people afflicted with disease to have a license, so that the public may be protected against the practice of treatment by

381

inexperienced persons. Citations in support include Gula v. Gawel, 71 Ill App2d 174, 218 NE2d 42 (1966), and Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74 (1954). In Gula, it is said (p 182):

> "The violation of an ordinance is prima facie evidence of negligence if the ordinance is designed for the protection of human life or property. If a plaintiff falls within the class of persons the ordinance is designed to protect, and if the violation is the proximate cause of the injury, the plaintiff has a cause of action."

In Ney, it is said (pp 78–79):

> "The violation of the statute is prima facie evidence of negligence under the prevailing rule of this State. . . . This in itself creates no liability. The injury must have a direct and proximate connection with the violation of the statute before liability will be held to exist. It is the existence of this cause and effect relationship which makes the negligence of the defendant actionable."

Plaintiff asserts that the element of proximate cause was established by his testimony and by the testimony of Dr. Sloan, who testified that the treatment of plaintiff was not the kind that a skillful and careful physician in Chicago in December, 1960, would have used; that there may or may not have been a causal connection between the condition of ill-being and the treatment given, and that there could have been an affectation of the condition of ill-being by defendant's treatment. Plaintiff states, "It was proper for Doctor Sloan to answer 'May or may not' in response to the 'might or could' hypothetical questions." He noted that the courts of this State have indicated that "may or could" was proper. Authorities cited include People v. Rongetti, 338 Ill 56, 170 NE 14 (1929); Kimbrough v. Chicago

City Ry. Co., 272 Ill 71, 111 NE 499 (1916), and Chicago Union Traction Co. v. Roberts, 229 Ill 481, 82 NE 401 (1907), where the court said (p 484):

> "It is entirely immaterial whether the witness testified that the injury was the cause of the condition, or that the injury was sufficient to cause the condition or might have caused it. In any event, the testimony was merely the opinion of the witness, given, as such, upon a state of facts assumed to be true. It still remained for the jury to determine the facts, and the opinion was nevertheless an opinion only, whether it states what did cause the condition or what might cause it. The question may be asked in either form."

█ Plaintiff contends that it was not necessary to prove that defendant caused plaintiff's pneumonia, only that defendant aggravated "a preexisting condition of ill-being" of plaintiff. He notes that aggravation of a preexisting ailment is recognized as a separate element of compensable damages in Illinois, citing as authorities IPI instruction 30.03 and Behles v. Chicago Transit Authority, 346 Ill App 220, 104 NE2d 635 (1952).

Defendant argues that the directed verdict was properly granted because under the Pedrick test "no contrary verdict based on that evidence could ever stand." He maintains that the trial court had a duty to direct a verdict for defendant in this case because plaintiff's evidence did not establish the necessary element of causal connection between defendant's treatment and the illness plaintiff suffered subsequently. Defendant contends that Dr. Sloan, plaintiff's own medical expert, negated any causal connection between the alleged actions of the defendant and the injury complained of by plaintiff, and Dr. Sloan further said, "The natural history of pneumonia is a very difficult thing to know, because when a given point in time, you have pneumonia

—but, what happened a day or six days before, or two months before, you don't know."

Cited authorities include Manion v. Brant Oil Co., 85 Ill App2d 129, 229 NE2d 171 (1967), and Scardina v. Colletti, 63 Ill App2d 481, 211 NE2d 762 (1965). In Manion, it is said (p 136):

> "Our courts have held that there should be no recovery where there has been a failure to prove a causal connection between the injury and the event at issue. . . .
>
> "Again the standards in decisions of our courts are that the causal connection between the injury sustained must not be contingent, speculative or merely possible, but that there must be such degree of probability as to amount to a reasonable certainty that such causal connection exists."

In Scardina, it is said (p 487):

> "The test by which a plaintiff's evidence is judged when subjected to a motion for directed verdict is whether there is any evidence or reasonable inference arising from the evidence, tending to prove the cause of action alleged in the complaint. The court must decide if the evidence fails as a matter of law to support the complaint. It becomes such a question of law only where the evidence is such that all reasonable men would reach the same conclusion or where there is a total failure to prove one or more of the elements necessary to the cause of action. When the evidence is considered in its most favorable aspect to the plaintiff and there is a total failure to prove a necessary element of his case, the motion for a directed verdict should be sustained."

The trial judge, in his "Opinion of the Court," included the following excerpts:

384

"Defendant could not be chargeable with a higher degree of responsibility than a physician. The standard for a physician is stated in GAULT v. SIDEMAN, 42 Ill App2d 96 (1963), wherein a directed verdict for defendant was sustained:

> " 'In order for the plaintiff to prevail, he would have to show by affirmative evidence that the defendant was unskillful and negligent, and, second, that his want of skill and care caused the injury to the plaintiff. If either element is lacking in the proof, no case is presented for the consideration of the jury.' (Also see other cases cited therein.)

"The court finds from the record, and in particular, from the testimony of Dr. Sloan, that the plaintiff did not prove any causal connection between treatment of the plaintiff by the defendant and the pneumonia subsequently contracted by the defendant. The court also finds that plaintiff failed to establish any aggravation of the condition of ill-being of the plaintiff by the defendant. . . .

". . . Plaintiff also bases his motion for a new trial on Count II of the complaint, which alleges malice and fraud on the part of defendant. . . .

"Therefore, as to Count II, the court finds that the record fails to disclose any testimony which would establish the defendant's treatment of plaintiff as fraudulent, malicious or injurious; hence there can be no recovery as to Count II."

■■ After examining this record, we conclude that plaintiff's evidence lacked the necessary element that defendant's want of skill or care caused injury to plaintiff or aggravated plaintiff's existing condition. Dr. Sloan's testimony negated any causal connection. He had

no opinion as to whether defendant's "want of skill and care" caused or aggravated the condition of plaintiff. Plaintiff's proof as to causal connection had little probative value and lacked that degree of probability so as to amount to a reasonable certainty that such causal connection existed. This left the necessary element of causal connection "contingent, speculative or merely possible." We find that it was proper for the trial court to direct a verdict for defendant on Count I. 85 Ill App2d 129, 229 NE2d 171 (1967).

Plaintiff further contends that the trial court erred in directing a verdict in favor of defendant on Count II, which included the following allegations:

> "38. That the plaintiff is entitled to exemplary and punitive damages because of the fraudulent and malicious conduct of the defendant.

> "39. That malice is the gist of the action herein, and should the plaintiff prevail herein a body attachment against defendant, SALVATORE SALVAGGIO, is sought."

Plaintiff argues substantially that defendant committed an intentional tort, similar to a battery, and acted with malice so as to entitle plaintiff to punitive damages outside of any actual damages sustained. Plaintiff notes that if someone holds himself out as a doctor and treats people without their knowing his lack of qualifications, an intentional tort has been committed because presumably no consent to any treatment would have been given if these people were in fact so aware. Among the authorities cited are Williams v. Piontkowski, 337 Ill App 101, 84 NE2d 843 (1949); Matthei v. Wooley, 69 Ill App 654 (1897); and Church v. Adler, 350 Ill App 471, 113 NE2d 327 (1953).

■ As to Count II, defendant asserts that plaintiff has shifted his theory of recovery on appeal, and "he cannot be heard at this time to allege an act of a different nature from that which was alleged before the trial court and the direction in which he presented his case." We agree.

■ On this point the record shows that Count II was based on malice and fraud, and plaintiff sought exemplary damages "because of the fraudulent and malicious conduct of the defendant," and as to Count II the court found "that the record fails to disclose any testimony which would establish the defendant's treatment of plaintiff as fraudulent, malicious or injurious." As to Count II, we find the trial court properly directed a verdict in favor of defendant.

Under the pleadings and evidence in this case, we find the trial court properly directed a verdict for the defendant on both counts, and the judgment of the Circuit Court of Cook County in favor of defendant is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.