Aloysius **STAHLIN** and Louise Stahlin, Plaintiffs-Appellees and Cross-Appellants,

v.

**HILTON HOTELS CORPORATION,** a corporation, and Albert William Andersen, Administrator of the Estate of Alfreda Andersen, a/k/a Fredarica Andersen, Defendants-Appellants and Cross-Appellees,

v.

Dr. Edward Frank **ADDENBROOKE,** M.D., Defendant and Appellee.

Nos. 72–1773 to 72–1775.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1973.

Decided Aug. 28, 1973.

Rehearing Denied Sept. 19, 1973.

Thomas D. Allen, James Dorr, John M. Moelmann, Perry L. Fuller, Chicago, Ill., for Hilton.

Before KILEY and SPRECHER, Circuit Judges, and ESCHBACH, District Judge.*

ESCHBACH, District Judge.

This diversity action resulted in a jury verdict against defendants Andersen and Hilton and a directed verdict in favor of defendant Addenbrooke. The jury fixed damages in the amount of $150,000 in favor of Aloysius Stahlin and $60,000 in favor of his wife Louise on her loss of consortium claim. Andersen and Hilton appeal from the verdict and judgment. Plaintiffs cross-appeal from the directed verdict in favor of Dr. Addenbrooke. We affirm as to Andersen and Hilton, but we reverse as to Addenbrooke and accordingly remand for a new trial of the issues relating to his liability.

The primary questions raised on appeal by Andersen and Hilton relate to the sufficiency of the evidence to support the verdict against them, the propriety of the trial court's action in relieving plaintiffs of a certain pre-trial stipulation, and the correctness of certain instructions given the jury.

Plaintiff Al Stahlin checked into the Conrad Hilton Hotel in Chicago, Illinois, on May 24, 1966, for the purpose of attending a sales convention. After an afternoon at the race track, he and Mr. Ken Bishop returned to their room at the hotel and began to get dressed for a company dinner that evening. As Stahlin was hurriedly dressing, he got his foot tangled in his shorts, fell backward and struck his head against the wall about two and a half feet above the floor. Stahlin had to be helped to his bed by Bishop, and the two men stayed in the room rather than attend the company dinner. Stahlin complained of a headache, and Bishop observed a bruise or blood coming to the surface at the back of Stahlin's head. A short time later

Max W. Foust, Kansas City, Mo., Eugene F. Welter, Chicago, Ill., for Stahlin.

* District Judge Jesse E. Eschbach of the Northern Distirct of Indiana is sitting by designation.

that evening, Stahlin became nauseous and vomited. Bishop then decided to call the management of the hotel for a doctor. Bishop spoke to the assistant manager, described what had happened to Stahlin and was told that "some help" or a doctor would be sent. Fredarica Andersen came to the room about half an hour later and identified herself as a nurse. After learning the facts of the occurrence from Bishop, she examined and felt the back of Stahlin's head and took his temperature, blood pressure and pulse. She observed a bottle of pills on the table next to the bed and learned that Stahlin had a prior heart condition. Bishop testified that she and Stahlin discussed the fact that the pills were a blood thinner or anticoagulant he was taking for the heart condition. Stahlin complained to her of a terrific headache, and she further learned that he had vomited earlier. Before she left, Mrs. Andersen told Stahlin to stay in bed for twelve hours.

Mrs. Andersen died prior to trial. The following record which she made of her visit was received in evidence:

Pt was putting on his trousers and fell against the wall in his room, bumping back of head. Before this happened, he had been to the race track, had several drinks, ate a beef sandwich, and vomited contents of food and liquor. Pt took a codeine derivative tablet—also has a coronary condition, refused to go to hospital, will stay in bed for 12 hours. 13/p—15⅝—tem. 98.6 F.A.

Bishop testified that Mrs. Andersen said nothing to Stahlin about seeing a doctor or about going to a hospital. Stahlin did not testify.

Stahlin slept uneasily that night and was up several times. He vomited four or five times. Stahlin remained in the room the next morning when Bishop left to attend the 9 a. m. meeting of the convention. When he returned to the room between 12:00 and 12:30, he found Stahlin in a semicomatose state. An ambulance was called and Stahlin was taken to the hospital. He was diagnosed as having a subdural hematoma. Surgery was immediately performed to relieve the pressure on plaintiff's brain caused by the large blood clot or hematoma. Plaintiff suffered residual brain damage.

In addition to the foregoing sequence of events, the evidence at trial established that Mrs. Andersen, although commonly referred to at the hotel as a nurse, was not in fact licensed in the State of Illinois either as a registered nurse or a licensed practical nurse. She had been employed for many years by Dr. Addenbrooke in the medical department of the hotel, which department was under his supervision during its entire period of existence from 1948 through 1968. For some time prior to and including the month of May 1966, the medical department was without the services of a physician during the nighttime hours. Dr. Addenbrooke left Mrs. Andersen in charge of the medical department at night with the full knowledge and consent of the hotel management. During these hours it was the practice of the hotel to refer guests in need of medical assistance to Mrs. Andersen. She charged a standard rate of $15.00, the same amount charged for a doctor's night room call. This amount was added to the guest's bill, collected by the hotel, and remitted to Dr. Addenbrooke in accordance with their longstanding practice. Dr. Addenbrooke let Mrs. Andersen use her own judgment in making room calls and merely provided her with a list of specialists to whom she could refer guests. Mrs. Andersen did not consult with Dr. Addenbrooke concerning her room calls and her findings were not reviewed by him.

 We believe the evidence was sufficient to support a finding that Hilton was negligent in sending Fredarica Andersen to Stahlin's room in response to Bishop's request for help. Whether Bishop specifically requested a doctor and whether the assistant manager represented that a doctor would be sent are not determinative of this question.

Bishop related the circumstances of Stahlin's problem and Hilton undertook to render assistance. As the trial court correctly charged the jury, "the operator of a hotel owes no duty to provide any service for a guest who may be ill or injured. If, however, it undertakes to provide such service for any person, it must exercise ordinary care to provide such services that it has undertaken to give." *See* Nelson v. Union Wire Rope, 31 Ill.2d 69, 199 N.E.2d 769 (1965). We agree with plaintiffs that the duty undertaken by Hilton was more than merely "sending someone up" to Stahlin's room. Reasonable care under the circumstances required that the hotel send a doctor, or at the very least a licensed nurse, to provide the medical assistance requested on behalf of Stahlin. Moreover, while Hilton denies that it had knowledge of Mrs. Andersen's lack of a license, there is ample evidence in the record from which the jury could find that the failure to inquire as to her qualifications constituted negligence on the part of Hilton. Hilton knew she was making room calls on sick and injured guests and charging the same amount as a doctor. It was the established practice of the hotel to send her to a guest's room in response to a request for a doctor. Under these circumstances, since Hilton knew she was not a doctor, the jury could reasonably find the hotel chargeable with such further knowledge which a reasonable investigation would have revealed—that is, that Mrs. Andersen was not a licensed nurse. Hilton relies on Tansey v. Robinson, 24 Ill.App.2d 227, 164 N.E.2d 272 (1960), in support of its position that plaintiffs were required to show that the hotel had actual knowledge of Mrs. Andersen's lack of qualifications. However, the court in *Tansey, supra,* held that liability for the negligent acts of an independent contractor may be predicated upon a failure to exercise reasonable care in selecting a careful and competent contractor. The defendant there hired a truck driver who had a record of 29 convictions for traffic offenses, whose license

had been taken away from him, and who had no permit to carry property for hire. Although the defendant contended that it had no actual knowledge of the driver's incompetence and had made reasonable inquiries, the court held that the foregoing were "matters which could have been determined by the A & P upon inquiry, and they are matters which a trier of fact may take into consideration in determining A & P's liability." 164 N.E.2d at 276. Hilton states in its brief that both Dr. Addenbrooke and Mrs. Andersen were independent contractors. Thus, under the rule stated in *Tansey, supra,* Mrs. Andersen's lack of a nursing license in Illinois was a matter which could have been determined by Hilton upon inquiry, and it was a matter which the jury could properly take into consideration in determining whether Hilton was negligent in carrying out its voluntary undertaking to provide medical assistance for Stahlin. *See also* Gomien v. Wear-Ever Aluminum, Inc., 50 Ill.2d 19, 276 N.E.2d 336 (1971).

■ With respect to Mrs. Andersen, the evidence and the reasonable inferences therefrom support the jury's verdict against her estate. The evidence established that although she was not a licensed nurse, she went to Stahlin's room, identified herself as a nurse and proceeded to examine Stahlin. She learned about the fall and the blow to plaintiff's head and was told that he had a severe headache and had vomited earlier. There was also evidence that she knew not only of Stahlin's heart condition but also that he was taking a blood thinner type pill called Dicumarol therefor. Plaintiffs produced expert testimony that a reasonably well qualified registered nurse, apprised of the facts known to Mrs. Andersen after her examination of Stahlin, would have referred him to a hospital where neurosurgical services could have been sought on the night of May 24, 1966. Bishop testified that Mrs. Andersen said nothing about Stahlin seeing a doctor or going to a hospital that night and merely told him

to stay in bed for 12 hours. There was further expert testimony that Stahlin exhibited the classic symptoms of a developing subdural hematoma at the time he was examined by Mrs. Andersen. Since the jury could reasonably conclude from the foregoing evidence that Mrs. Andersen failed to exercise the degree of care required of a reasonably well qualified nurse, the verdict would be sustainable even if she had been licensed as required by the Illinois Nursing Act, 91 S.H.A. §§ 35.33 and 35.54. In addition, however, the expert testimony at trial established a sufficient causal connection between her violation of the Nursing Act and the plaintiff's injury to constitute prima facie evidence of negligence. *Cf.* Guttman v. Salvaggio, 117 Ill.App.2d 375, 254 N.E.2d 637 (1969).

■ Both Hilton and Andersen contend that the evidence was insufficient with respect to the issue of proximate cause. However, plaintiffs introduced substantial expert testimony that subdural hematoma is a progressive condition in which pressure due to intracranial bleeding builds up in the skull to the point where unconsciousness results. The testimony of Dr. I. Joshua Speigel, a neurosurgeon, was that a subdural hematoma could be treated by simple burr hole procedure, instead of extensive surgery such as that undergone by Stahlin, if the condition was detected early enough. The jury could reasonably find that had Mrs. Andersen referred Stahlin to a hospital on the night of May 24, 1966, the condition would have been diagnosed and treated early enough to avoid the massive surgery and subsequent disability suffered by Stahlin. *See* Hicks v. United States, 368 F.2d 626 (4th Cir. 1966); O'Brien v. Stover, 443 F.2d 1013 (8th Cir. 1971); Reeves v. North Broward Hospital, 191 So.2d 307 (Fla.App.1966); Levermann v. Cartall, 393 S.W.2d 931 (Tex.Civ.App.1965).

■■ Defendants Hilton and Andersen assign as error the trial court's action in relieving plaintiffs of a stipulation stating that at all material times Fredarica Andersen was a registered nurse of the State of Illinois. Plaintiffs did not discover the lack of registration until after the trial had begun. Although the timing of this occurrence, five days into trial, was a factor for the court to consider in determining whether to grant relief from the stipulation, the manifest injustice to plaintiffs of having to proceed on the basis of a clearly mistaken stipulation as to such an important factual matter warranted the exercise of the trial court's discretion under Rule 16 of the Federal Rules of Civil Procedure. *See* Central Distributors, Inc. v. M.E.T., Inc., 403 F.2d 943 (5th Cir. 1968); H. B. Zachary Co. v. United States, 344 F.2d 352, 170 Ct.Cl. 115 (1965). The protective measures utilized by the court were sufficient under the circumstances to avoid undue prejudice to defendants, neither of whom moved for a continuance.

■ While Hilton and Andersen each raise several additional contentions with respect to the jury instructions and certain statements made by plaintiffs' counsel in argument, we find them to be without merit. Only one of these contentions warrants comment here. The trial court concluded its Instruction O with the following paragraph:

> "The failure of Fredarica Andersen to apply, possess and apply the knowledge and use the skill and care that is ordinarily used by reasonably and well-qualified nurses under similar circumstances, is a form of negligence which we commonly refer to as malpractice."

Defendants contend that by giving this instruction, the court instructed the jury that Fredarica Andersen was negligent. Neither Hilton nor Andersen raised this objection at trial or included it in the motion for a new trial. Assuming, however, that the question can be raised on appeal, we agree with plaintiffs that the instruction, when read in its entirety

and in the context of all other instructions given the jury, Odekirk v. Sears Roebuck & Co., 274 F.2d 441 (7th Cir. 1960), did not pre-empt the function of the jury and does not call for reversal.

Finally, we are persuaded by a review of the evidence as it relates to the alleged negligence of Dr. Addenbrooke in authorizing Mrs. Andersen to engage in extensive diagnosis and treatment activities that the trial court erred in directing a verdict in his favor. The evidence showed that Mrs. Andersen, although not even a licensed nurse, was permitted to make room calls on sick and injured hotel guests, and was permitted to use her own judgment without benefit of instructions from Addenbrooke other than a list of medical consultants, and without subsequent review of her findings by Addenbrooke. She charged the same amount for a room call as a doctor, which amount was collected by the Hilton and remitted to Addenbrooke. Thus, there was evidence in the record from which the jury could find that Addenbrooke permitted and authorized Mrs. Andersen, as a general practice and on the particular night in question, to perform duties performed under Illinois law only by licensed physicians. 91 S.H.A. §§ 16i and 16j (Illinois Medical Practice Act) and 91 S.H.A. § 35.-35(1) (Illinois Nursing Act). The acts performed by Mrs. Andersen with respect to Stahlin could reasonably be found to constitute medical diagnosis, prescription, and treatment so as to fall within the foregoing statutory prohibitions. Given this state of the record, the jury should have been permitted to consider whether the delegation of such duties by Addenbrooke to Mrs. Andersen constituted negligence and whether such negligence was a proximate cause of Stahlin's disability. *See* Semeniuk v. Chentis, 1 Ill.App.2d 508, 117 N.E.2d 883 (1954); Joly v. Mellor, 163 Wash. 48, 229 P. 660 (1931); Restatement of Torts, Second §§ 307 and 308.

Accordingly, the judgment is affirmed as to the defendants Hilton and Andersen. As to the defendant Addenbrooke, the judgment is reversed and remanded for a new trial as to his liability.

Affirmed in part and reversed in part.